## Case No. 403.

### The ANNA v. The GOLDEN HORN.

### The GOLDEN HORN v. The ANNA.

[36 Leg. Int. 294;[1] 14 Phila. 521.]

District Court, E. D. Pennsylvania. July 14, 1879.

#### COLLISION—BETWEEN STEAM AND SAIL—FOG.

[When a master of a steamship knows that another vessel is in his front, envelopd by a fog, and goes forward without properly heeding her fog signals, and knowing further that in all probability there would not be sufficient time to avoid a collision when she came in sight, is guilty of negligence, which will render his vessel liable for an ensuing collision.]

In admiralty.

Charles Gibbons, Jr., and J. Warren Coulston, for the Anna.

James B. Roney, for the Golden Horn.

BUTLER, District Judge. On the 15th of May, 1879, near five o'clock in the afternoon, the German ship "Anna," and the English steamship "Golden Horn," underweigh at sea, in latitude 36° 53′ north, and longitude 74° 12′ west, came into collision, injuring each other seriously. On the 21st of May,

[1][Opinion reprinted from 36 Leg. Int. 294, by permission.]

the "Golden Horn" was libelled, for compensation to the "Anna;" and three days later the "Anna" was libelled for compensation to the "Golden Horn." At the time of collision the wind was east northeast. The "Anna" was closehauled, going ·north, half west, and the "Golden Horn" about east. The evidence taken relieves the "Anna" from the imputation of fault, contained in the libel against her. Holding her course steadily, until danger became apparent, she then made every available effort to avoid it. The libel filed against her must, therefore, be dismissed. Is the "Golden Horn" responsible to the "Anna" ? It was her duty to keep out of the "Anna's" way. She did not, and is, therefore, responsible; unless the circumstances existing at the time, excuse her. She avers they do; that a dense fog prevailed, concealing the approach of the "Anna," until it was too late to avoid the collision; that she was proceeding with proper caution, omitting no duty; and that the result was therefore the consequence of inevitable accident. If this averment be true, she is not responsible. But the burden of proving it rests on her. Has she borne this burden successfully? That a fog existed is undisputed. Its extent, or density, is in controversy; and the testimony of the witnesses from the respective vessels, is in direct conflict, regarding it. Those from the "Golden Horn" say it was so dense that a vessel could not be seen more than a few lengths off; that with a proper, vigilant look out, the "Anna" was not seen until within three or four lengths; and those on the "Anna" say it was so light as to admit of seeing a vessel at the distance of a mile and a-half; and that they plainly saw the "Golden Horn" at that distance. It is difficult to reach a satisfactory conclusion respecting the fact here involved. The circumstance that both vessels were signalling, as it is usual and proper to do in case of dangerous fog, to some extent supports the respondent's witnesses. But the existence of a comparatively light, or ordinary fog, would as well account for the signals as a dense one. Proper care, as well as the terms of the statute, would forbid their omission under such circumstances. And the weight of the direct testimony seems to be against the respondent. A careful consideration of all the evidence has not satisfied me that the "Anna" (with a vigilant lookout from the "Golden Horn,") could not have been seen earlier than she was, and in time to avoid the collision. While it seems probable that the fog was not so light as the libellant's witnesses represent, I am not satisfied that it was so dense as stated on the other side. The truth doubtless lies between these conflicting statements. This view of the case is fatal to the defence. But if the respondent's allegations respecting the fog, were accepted, the result would not be different. Passing by all other questions, arising on this view of the case, and

coming directly to that of her duty at the time the "Anna's" horn was heard, and subsequently when she appeared to view, it seems quite plain that the respondent was in fault. The horn was twice heard; the second time very distinctly off her starboard bow. What was then done is not clear. There is evidence that her speed was reduced and her helm put to starboard; but looking at all the witnesses say on this subject, and the ship's log, it is quite uncertain whether the speed was reduced when the horn was heard, or when the vessel was subsequently seen. What the master says should have been done was "to put the helm hard a starboard, and let the engines go dead slow * * * in order to ascertain where the horn was. * * * We do not know how the vessel is going by hearing her horn, she might be going either way—might be going directly opposite from what we were going." Whether the helm was put hard a starboard, and the engines reduced to "dead slow," need not be determined, for taking the master's statement respecting the density of the fog, and the impossibility of knowing the "Anna's" locality and course at the time, it would seem quite plain that prudence required him to stop at once instead of simply decreasing his speed. With knowledge that a vessel was in his front, enveloped in fog, so dense as he represents, and knowing, as he must or should, that there might not, and probably would not be time to avoid collision after it came in view, to go blindly forward was negligent, if not reckless. He understood the distance at which a vessel could then be seen, was familiar with his ship, the working of her engine, and the space required to stop or turn. This distance, as the sequel proved, (accepting his statement,) was not sufficient to enable him to keep off. Under such a condition of circumstances as the master describes, I repeat, it would seem quite plain that common prudence required him to stop, when the horn was heard. Had he done so the collision would have been avoided. That there was time to do so, is reasonably clear; and that no effort was then made is equally clear. But taking the distance from the "Anna," when she first came in view, to be as stated by a majority of the respondent's witnesses, I am not satisfied that the space was not then sufficient to enable the respondent to keep off. According to this testimony the "Anna" was still some twelve hundred feet away. It would seem quite reasonable to believe that the respondent could have stopped within this distance, or so far changed her course, as to avoid the collision. I think the weight of the evidence—and all of it comes from the respondent's witnesses—is that the engine was not reversed when the "Anna" first came to view. The master was below and had to be sent for. Whether the messenger went when the second horn was heard, or afterwards when the vessel appeared, is uncertain. That the engine was not reversed until the master came on deck, and gave the order, is certain; and at this time, he says, the "Anna" was but one and a-half lengths away. Reversing the engine then, his vessel stopped, as he states, by the time the other was reached. Had it been done when the vessels were three lengths apart, the collision (according to this statement) could not have occurred.

I need not dwell on the case. Sufficient has been said to explain the reasons which impel the court to overrule the defence. The answers of the assessors respecting the duty and custom of steam vessels, placed as the "Golden Horn" was at the time she heard the "Anna" signal; and the power of the former to avoid the collision on seeing the latter, at, or near, a distance of twelve hundred feet, sustain the views I have expressed on these points; and will be found annexed hereto. A decree must be entered for the libellant.